**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LAVETTE BROUSSARD                 :
                                         :
                                         :
             v.                           :    Civil No. CCB-11-3401
                                         :
                                         :
LEON E. PANETTA,               :
SECRETARY OF DEFENSE      :
                                         :
                                         :
                                         :

**MEMORANDUM**

        Now pending before the court is a motion to dismiss or, in the alternative, for summary judgment, filed by defendant Leon E. Panetta, Secretary of Defense ("Mr. Panetta"), against plaintiff Lavette Broussard ("Ms. Broussard"). Ms. Broussard is appealing a decision of the Merit Systems Protection Board ("MSPB") sustaining the Defense Department's decision to remove her from her position at the Defense Information Systems Agency ("DISA"). Ms. Broussard is also suing Mr. Panetta, as head of the Defense Department, alleging hostile work environment, retaliation, wrongful termination, and discrimination based on race, age, gender, and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); the Rehabilitation Act of 1973; the Age Discrimination in Employment Act of 1967; and the Civil Service Reform Act. The issues in this case have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6. For the reasons stated below, Mr. Panetta's motion to dismiss, construed as a motion for summary judgment on two of Ms. Broussard's claims, shall be granted.

**BACKGROUND**

Lavette Broussard began working as an IT Specialist for the Defense Information

Systems Agency (DISA) at the Department of Defense in 1985. (Compl., ECF No. 1, ¶ 12.) Her

duties included diagnosing and resolving hardware and software problems and conducting

system security evaluations. (*Id.* at ¶ 13.) In 1991, Ms. Broussard filed a racial discrimination

complaint against DISA. (*Id.* at ¶ 15.) Fifteen years later, in 2006, Ms. Broussard joined AFGE

Local 2. (*Id.* at ¶ 16.) She was elected executive vice president of Local 2 in 2007 and president

in 2008. (*Id.*) Ms. Broussard claims that DISA has taken adverse actions against her because of

her union activity, including disapproving legitimate time she spent representing union

employees. (*Id.* at ¶ 17.) Ms. Broussard eventually resigned as president of the union under

medical advice. (*Id.* at 18.)

In October 2009, Ms. Broussard was suspended for making a false statement about her

whereabouts. (Def.'s Mot., ECF No. 11, Ex. 4.) That same month, Ms. Broussard began

receiving treatment for stress-induced hypertension, which she attributes to a hostile work

environment. (ECF No. 1, ¶ 15.) On June 16, 2010, Ms. Broussard was given a leave counseling

memorandum warning her that she would not be given leave without pay anymore because her

frequent unscheduled absences adversely affected the work unit. (ECF No. 11, Ex. 5.)

Two days later, Ms. Broussard tripped over a trash can and fell backwards while at work.

(*Id.* at ¶ 21; ECF No. 11, Ex. 6.) She filed a federal worker's compensation claim form with the

Department of Labor that same day. (ECF No. 11, Ex. 6.) Ms. Broussard claims that since the

fall she has been incapacitated and unable to work, pointing to disability certificates issued by

her physician stating that she should not return to work "until and unless the work conditions

change[]." (ECF No. 1, ¶¶ 21, 23.) Indeed, Ms. Broussard remained absent from work from June

18, 2010, the date of her injury, until her proposed removal over seven months later, except for a

partial day on December 27, 2010. (ECF No. 11, Ex. 1.) On August 27, 2010, Ms. Broussard's

supervisor requested medical documentation to justify her continued absence from work. (ECF

No. 11, Ex. 8.) On September 20, 2010, Ms. Broussard filed another worker's compensation

claim in which she again claimed to be incapacitated for work. (ECF No. 11, Ex. 9.) Ms.

Broussard reported earnings from two days of outside employment in her claim. (*Id.*) In

November 2010, Ms. Broussard's supervisor Timothy Kochman sent her two disciplinary

memoranda: an "unacceptable attendance" memorandum and a notice of proposed suspension.

(ECF No. 11, Ex. 10 & 11.) The unacceptable attendance memorandum informed Ms. Broussard

of possible leave "abuse" and requested detailed medical documentation to support her continued

absences. (ECF No. 11, Ex. 10 at 1-2.) The notice proposed a thirty-day suspension for "conduct

unbecoming," specifically, that Ms. Broussard had worked for another entity while allegedly

incapacitated from her position with DISA. (ECF No. 11, Ex. 11 at 1.)

On November 22, 2010, Ms. Broussard submitted medical documentation in response to

her supervisor's memoranda. (ECF No. 11, Ex. 12.) The documentation, a radiology report,

stated that Ms. Broussard had a "mild narrowing of her lumbar spine," but "no evidence of

fracture, dislocation or other bony abnormality." (*Id.*) On December 6, 2010, the Department of

Labor denied Ms. Broussard's claim for worker's compensation benefits because she "did not

submit medical evidence containing a medical diagnosis in connection with the injury." (ECF

No. 11, Ex. 13 at 1-2.) The decision stated that "[t]he medical evidence in [Ms. Broussard's] case

only contains a diagnosis of 'pain,'" and noted that "[p]ain is a symptom and not a diagnosis of a

medical condition." (*Id.* at 2.) On December 10, 2010, Ms. Broussard responded to the notice of

proposed suspension, admitting to having worked from home for a non-profit organization in

August and September 2010. (ECF No. 11, Ex. 14.)  Pursuant to a follow-up request for

additional information from DISA, Ms. Broussard specified that she had worked for
compensation from June 27-31, 2010 as a campaign manager for a political campaign and for
Patriots Technology Center on four days in August and September 2010. (ECF No. 11, Ex. 16.)

On February 10, 2011, Ms. Broussard filed a formal complaint of discrimination with the
DISA EEO, alleging ongoing harassment, discrimination based on race and age, and agency
reprisal based on her "previous EEO activities."[1] (ECF No. 1, ¶ 33; ECF No. 11, Ex. 2.) On
February 16, 2011, Ms. Broussard was issued a notice of proposed removal, which charged Ms.
Broussard with conduct unbecoming a federal employee and for being absent without leave or in
the alternative for excessive absences. (ECF No. 1, ¶ 35; ECF No. 11, Ex. 1.) In support of the
"conduct unbecoming" charge, DISA claimed that Ms. Broussard worked for compensation for
two non-federal entities between June and September 2010 even though she had informed the
agency that she was incapacitated for work. (*Id.* at ¶¶ 37, 40.) On April 20, 2011, DISA issued a
decision to remove Ms. Broussard from federal service. (*Id.* at 47.) That decision became
effective on April 25, 2011. (*Id.*)

On May 24, 2011, Ms. Broussard filed an appeal of her termination with the MSPB. In
her appeal, Ms. Broussard alleged race, age, and disability discrimination and removal in
retaliation for filing a discrimination complaint with the EEO in February 2011. (ECF No. 11,
Ex. 3 at 6-7.) On September 21, 2011, the MSPB issued an initial decision upholding Ms.
Broussard's removal. That decision became final on October 26, 2011, and on November 23,
2011, Ms. Broussard filed this appeal.

## **ANALYSIS**

**Standard of Review**

---

[1] By "previous EEO activities" Ms. Broussard was referring to the discrimination complaint she filed in 1991. (ECF
No. 11, Exs. 2 & 17.)

Appeals from MSPB actions are ordinarily heard in the Court of Appeals for the Federal

Circuit. 5 U.S.C. § 7703(b)(1). "A federal employee who claims that an agency action appealable

to the MSPB violates [certain] antidiscrimination statute[s]," however, "should seek judicial

review in district court." *Kloeckner v. Solis*, -- S. Ct. --, No. 11-184, 2012 WL 6097022, *10

(Dec. 10, 2012).[2] In such a case, the district court reviews the discrimination claims *de novo* and

the nondiscrimination claims under an "arbitrary and capricious" standard. 5 U.S.C. § 7703(c).

Specifically, with regard to the nondiscrimination claims, the district court reviews the

administrative record to determine whether the MSPB's actions, findings, or conclusions are:

"(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2)

obtained without procedures required by law, rule, or regulation having been followed; or (3)

unsupported by substantial evidence." *Id.* "Substantial evidence" in this context means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Frederick v. Dep't of Justice*, 73 F.3d 349, 352 (Fed. Cir. 1996) (quoting *Consol. Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938)). The burden is on the appellant to prove arbitrariness or

capriciousness, procedural impropriety, or lack of substantial evidence. *Harris v. Dep't of*

*Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

This case comes before the court on a motion to dismiss pursuant to Rule 12(b)(6), or, in

the alternative, for summary judgment. "[T]he purpose of Rule 12(b)(6) is to test the sufficiency

of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)

(internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178

F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-

---

[2] The relevant antidiscrimination statutes are Title VII, the Fair Labor Standards Act, the Rehabilitation Act, and the Age Discrimination in Employment Act. 5 U.S.C. § 7702(a)(1)(B) (2012).

pled allegations of the complaint as true," and "construe the facts and reasonable inferences

derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d

472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are

substantially aimed at assuring that the defendant be given adequate notice of the nature of a

claim being made against him, they also provide criteria for defining issues for trial and for early

disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir.

2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to

raise a right to relief above the speculative level, . . . on the assumption that all the allegations in

the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set

forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and

conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

      Where matters outside the pleadings are considered by the court, a defendant's motion to

dismiss will be treated as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d);

*Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). Federal Rule of Civil Procedure 56(a) provides

that "[t]he court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." The

Supreme Court has clarified that this does not mean that any factual dispute will defeat the

motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

**Discussion**

*Administrative Exhaustion*

As a threshold matter, the court must address the issue of whether Ms. Broussard exhausted administrative remedies such that the court has jurisdiction over her complaint. Mr. Panetta argues that Ms. Broussard's claims must be dismissed because she failed to exhaust administrative remedies with the EEOC before filing an appeal with the MSPB related to the same claims. According to Mr. Panetta, Ms. Broussard irrevocably elected to adjudicate her claims through the statutory EEO procedure by filing first with the EEO. Since she failed to wait 120 days for the EEO to issue a final decision before filing an appeal with the MSPB, claims Mr. Panetta, she failed to exhaust administrative remedies and the court lacks subject matter

jurisdiction over her complaint. Ms. Broussard contends that she was not required to choose between the two processes because she appealed her removal with the MSPB only and did not file discrimination claims resulting from her removal with the EEO. In Ms. Broussard's view, the discrimination issues she raised in her February 2011 complaint were "separate and apart" from those in her MSPB appeal. In response, Mr. Panetta argues that the EEO and MSPB claims were not "separate and apart" because Ms. Broussard relied on her pending EEO claims to support her alleged retaliation claim before the MSPB.

"When an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination, she is said (by pertinent regulation) to have brought a '"mixed case."'" *Kloeckner*, 2012 WL 6097022, at *3 (citing 29 C.F.R. § 1614.302). An aggrieved person may initially file a mixed case complaint with the agency itself or bring an appeal on the same matter with the MSPB, but not both. *Id.*; 29 C.F.R. § 1614.302. If an individual files with both agencies, whichever is filed first is considered an election to proceed in that forum. 29 C.F.R. § 1614.302.

A mixed case complaint is a "complaint of employment discrimination filed with a federal agency . . . related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB)." 29 C.F.R. § 1614.302(a).  When Ms. Broussard filed her formal EEO complaint on February 10, 2011, there had been no such agency action because DISA had only *proposed* a suspension. *See Kloeckner*, 2012 WL 6097022, at *3 (noting that an employee may only appeal "particularly serious" agency personnel decisions to the MSPB, such as "a removal from employment or a reduction in grade or pay"). Ms. Broussard's February complaint is therefore simply a complaint of employment discrimination, *see* 29 C.F.R. §

1614.103(a), and not a mixed case complaint, as Mr. Panetta alleges.[3] After Ms. Broussard was

removed, she filed an appeal of her removal with the MSPB. Under 29 C.F.R. § 1614.107(a)(4),

the EEO should have dismissed her complaint regarding the proposed suspension and

incorporated those allegations into her MSPB appeal. *See also Vinieratos v. U.S. Dept. of Air

Force*, 939 F.2d 762, 776 (9th Cir. 1991) (Rymer, J., dissenting). Regardless, because Ms.

Broussard waited until after the MSPB rendered a final decision on her appeal before filing this

complaint in federal court; she exhausted administrative remedies on all but her gender

discrimination claim.[4] *See* 5 U.S.C. § 7702(a)(3)(A); 29 C.F.R. § 1614.310(b).

*Discrimination*

Ms. Broussard remaining allegations of discrimination consist of claims of disparate

treatment on the basis of race and age. To set forth a *prima facie* case of discrimination under the

*McDonnell Douglas* framework, a plaintiff must show that: (1) she is a member of a protected

class under Title VII or the ADEA; (2) she suffered an adverse employment action; (3) she was

performing her job duties at a level that met her employer's legitimate expectations at the time of

the adverse employment action; and (4) similarly situated employees outside of her protected

class(es) received more favorable treatment. *See White v. BFI Waste Services, LLC*, 375 F.3d

288, 295 (4th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Because Ms. Broussard has not shown that similarly situated employees outside of her

protected classes were treated more favorably than she was, she has not established a *prima facie*

case of discrimination under Title VII or the ADEA. Ms. Broussard has not identified a single

---

[3] The Secretary claims that Ms. Broussard's EEO case is a "mixed case" because "she sought review of her suspension and other disciplinary actions, claiming they were the product of discriminatory animus." (ECF No. 11, 13.) The Secretary also states that Ms. Broussard filed her formal EEO complaint on February 25, 2011 (*Id.*), instead of on February 10, 2011, as listed on the filing. (*See* ECF No. 11, Ex. 2.)

[4] Because Ms. Broussard did not raise a gender discrimination claim in either her formal EEO complaint or her MSPB appeal, she has failed to exhaust administrative remedies regarding this claim. *See Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300-01 (4th Cir. 2009). Accordingly, Ms. Broussard's gender discrimination claim must be dismissed.

employee outside of her protected classes who was treated more favorably than she was treated. Instead, her complaint consists of generic legal conclusions that: (1) she was "treated . . . differently on the basis of her race, gender, age, [and] disability"; (2) DISA "granted non-disabled employees, younger employees, male employees, [and] employees of other races . . . reasonable accommodations, did not remove them while they were out on medical leave and accepted their medical documentation without questioning [its] authenticity"; and (3) DISA "submitted the workers' compensation claims of employees not in [Ms. Broussard's] protected categories in a timely fashion." (Compl., ECF No. 1, ¶¶ 48-49.) Ms. Broussard also claims that DISA did not "charge employees not in [her] protected categories with 'conduct unbecoming'" or order them back to work while they were out on approved medical leave. (*Id.* at ¶ 50.) These claims are unsupported by any factual allegations, such as the employees to whom they refer, their job titles, or details about their requests for reasonable accommodation or their experiences while on medical leave. Under *Twombly*, such conclusory allegations are insufficient to state a claim for relief. *See* 550 U.S. at 555. Moreover, the complaint fails to allege any facts that would otherwise create an inference of discriminatory intent on the basis of race or age.  Ms. Broussard thus has failed to state a plausible claim under Title VII or the ADEA. Accordingly, the court will grant Mr. Panetta's motion to dismiss as to Ms. Broussard's race and age discrimination claims.[5]

*Hostile Work Environment*

Ms. Broussard also alleges that the defendant created a hostile work environment, presumably in violation of Title VII, the ADEA, and/or the ADA.[6]  To establish a hostile work environment claim under Title VII, the ADEA, or the Rehabilitation Act, a plaintiff must show

---

[5] Even if Ms. Broussard had stated a *prima facie* claim of discrimination, it would fail on summary judgment because her employer had a legitimate nonpretextual reason for firing her, as explained *infra*.
[6] Ms. Broussard's complaint does not specify the statute under which she brings her hostile work environment claim.

that: (1) she is a member of a protected class under Title VII or the ADEA or is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001) (setting out elements of a racially hostile work environment claims); *Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006) (assuming without deciding that a hostile work environment claim is cognizable under the ADEA); *Pueschel v. Peters*, 577 F.3d 558, 564-65 (4th Cir. 2009) (recognizing a hostile work environment claim under the Rehabilitation Act).

To prove an abusive work environment claim, a plaintiff must show not only that she subjectively believed her workplace environment was hostile, but also that a reasonable person could perceive it to be objectively hostile. *Equal Employment Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). To determine whether a reasonable person would perceive workplace conduct to be severe and pervasive, the court considers a number of factors, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998).

To support her hostile work environment claim, Ms. Broussard alleges that her supervisors disapproved legitimate time she spent representing union employees, preemptively denied her future ad hoc telecommunicating requests, and failed to grant her an accommodation to work from home after her injury. These incidents do not constitute harassment. Ms. Broussard makes no factual allegations that her supervisors threatened or humiliated her. Neither does Ms.

Broussard point to any situation in which her supervisors made offensive utterances regarding her race, gender, age, or alleged disability. For harassment to be sufficiently severe or pervasive, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). Discrete and isolated personnel decisions, such as those Ms. Broussard cites, simply do not rise to the level of a hostile work environment. *Pueschel*, 577 F.3d at 566; *Lewis v. D.C.*, 653 F.Supp.2d 64, 80 (D.D.C. 2009) (explaining that in hostile work environment claims, it is important to "exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.") (internal citations and quotation marks omitted). Indeed, Ms. Broussard's claim that "non-disabled employees, younger employees, male employees, [and] employees of other races" were treated better than she was treated is supported by no factual allegations such that the court can infer her treatment was based on race, gender, age, or disability. *See, e.g.*, *Causey v. Balog*, 162 F.3d 795, 801-02 (4th Cir. 1998) (holding that the plaintiff had failed to establish a hostile work environment claim where there were no allegations of derogatory comments and only conclusory allegations that he was treated less favorably than younger or black employees). Because Ms. Broussard's complaint, at the very least, fails to make factual allegations of harassment based on her race, gender, age, or disability that could plausibly be considered severe or pervasive, her hostile work environment claim also must be dismissed.

*Retaliation*

Ms. Broussard also claims that she was removed from her position in retaliation for filing a discrimination complaint with the EEO. Because Ms. Broussard has not presented any direct evidence of retaliation, these claims will be analyzed under the *McDonnell Douglas* burden-

shifting framework. 411 U.S. at 802-05. Under this framework, a plaintiff alleging Title VII discrimination must first make out a *prima facie* case of that discrimination. *Id.* If he succeeds in carrying this initial burden, then "the burden shifts to the employer . . . 'to articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" *Lettieri v. Equant, Inc.*, 478 F.3d 640, 646 (4th Cir. 2007) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)). Once such a reason is provided, the burden shifts back to the plaintiff to demonstrate that the given reason was a pretext for unlawful discrimination. *Id.*

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) the employer took "materially adverse" action against her; and (3) the protected activity and the adverse action were causally connected. *Lettieri*, 478 F.3d at 650 & n. 2. Assuming, without deciding, that Ms. Broussard has made out a *prima facie* case of retaliation, Mr. Panetta has articulated legitimate, nondiscriminatory reasons for Ms. Broussard's removal that she cannot show to be pretextual. Ms. Broussard worked for compensation, without approval, for two non-federal entities, while claiming that she could not report for duty at DISA because of her medical condition.[7] Ms. Broussard also neglected to disclose all of her earnings from employment with an outside entity in her workers' compensation claim. She did not report for work at all after June 18, 2010, and specifically failed to report for duty from June 27, 2010 to July 31, 2010; on August 17, 19, and 25, 2010; on September 7 and 10, 2010; and from December 1, 2010 to February 16, 2011 (with the exception of December 27, 2010), without approval or adequate justification. (*See* ECF No. 11, Ex. 1.)

---

[7] Ms. Broussard contends that her work as a campaign manager and for a non-profit organization involved working from home after normal business hours, and that all of her work was performed within the guidelines set by her doctor. (ECF No. 1, ¶¶ 38, 41.) She also claims that she was never counseled or warned about working for outside entities. (*Id.*) The medical documentation Ms. Broussard provided to her employer, however, simply indicated that she could not work and did not provide any "guidelines."

Although Ms. Broussard contends that her absences "were all related to her medical condition" and that she "presented ample documentation as was required by DISA's rules and regulations" (*Id.* at ¶ 22), failure to report for duty, without approval for one's absences by a supervisor, is a legitimate nondiscriminatory reason for an employee's removal.

Furthermore, Ms. Broussard has presented no evidence that Mr. Panetta's reason for terminating her employment is false or pretextual. To the contrary, Ms. Broussard's complaint itself suggests that there was no foreseeable end to her absence from work – she cites her doctor's recommendation that she not return to work "until and unless the work conditions change[]." (Compl., ECF No. 1, ¶ 23.) Accordingly, Ms. Broussard has not rebutted Mr. Panetta's legitimate nondiscriminatory explanation for her removal, and the court will grant Mr. Panetta's motion for summary judgment as to Ms. Broussard's retaliation claim.

*Rehabilitation Act Claims*

Ms. Broussard also alleges disability discrimination in violation of the Rehabilitation Act. The Rehabilitation Act governs employee claims of disability discrimination against the federal government. 29 C.F.R. § 1614. The Act prohibits discrimination against "a qualified individual on the basis of a disability" with respect to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Nanette v. Snow*, 343 F.Supp.2d 465, 472 (D. Md. 2004) (quoting 42 U.S.C. § 12112(a)). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* (quoting 42 U.S.C. § 12111(8)). In order to establish a violation under the Rehabilitation Act, a plaintiff must prove: "(1) that [s]he has a disability; (2) that [s]he is otherwise qualified for the

employment or benefit in question; and (3) that [s]he was excluded from the employment or benefit due to discrimination solely on the basis of the disability." *Id.* (quoting *Doe v. Univ. of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995)).

Because Ms. Broussard cannot demonstrate that she is a "qualified individual with a disability," that is, that she can perform the essential functions of her job with or without reasonable accommodation, her Rehabilitation Act claims must fail.  "Essential functions" are the fundamental job duties of the employment position that the individual with the disability holds or desires. 29 C.F.R. § 1630.2(n)(1). To determine whether a particular job function is essential, the court may look to the employer's judgment as to which functions are essential, written job descriptions prepared before interviewing applicants for the job, and the work experience of past employees in the position or similar positions. 29 C.F.R. § 1630.2(n)). The plaintiff "bears the burden of establishing his ability to perform the essential functions of his job with a reasonable accommodation." *Fleetwood v. Harford Sys., Inc.*, 380 F.Supp.2d 688, 697 (D. Md. 2005) (citing *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir. 1994)).

Here, the agency argues that Ms. Broussard is not a "qualified individual with a disability" because she claimed that she could not report to work, and reporting to work is an essential function of her position. According to the Fourth Circuit, "[e]xcept in the unusual case where an employee can effectively perform all work-related duties at home, an employee 'who does not come to work cannot perform *any* of his job functions, essential or otherwise.'" *Tyndall*, 31 F.3d at 213 (internal citation omitted). Employees must do more than simply possess the skills necessary to perform the job in question; they "must be willing and able to demonstrate these skills by coming to work on a regular basis." *Id.* Ms. Broussard failed to report for work for over seven months without authorization or administratively acceptable documentation to

support her absence, and without confirming when she would return to duty.[8] Because no reasonable jury could find that reporting to work is not an essential function of Ms. Broussard's position, Ms. Broussard cannot demonstrate that she is an "otherwise qualified" individual entitled to the protections of the Rehabilitation Act. Accordingly, Mr. Panetta's motion for summary judgment will be granted.

*Nondiscrimination Claims*

Finally, Ms. Broussard appeals the MSPB's decision to uphold her removal, claiming it was "arbitrary and capricious or excessively harsh." (Pl.'s Opp., ECF No. 17 at 15.) As stated above, Ms. Broussard's nondiscrimination claims are reviewed under an "arbitrary and capricious" standard. 5 U.S.C. § 7703(c). The burden is on Ms. Broussard to prove arbitrariness or capriciousness. *See Harris*, 142 F.3d at 1467.

Ms. Broussard has failed to meet that burden. In sustaining the agency's charges of conduct unbecoming, AWOL, and excessive absences against Ms. Broussard, Administrative Judge Svendsen relied on her examination of the evidence and her review of the case law. Her carefully explained findings are consistent with this court's reading of the record and legal precedent. AJ Svendsen also found that the agency, in determining that removal was the appropriate penalty under the circumstances, appropriately considered the factors outlined in *Douglas v. Veterans Admin.*, 5 MSPB 313, 5 M.S.P.R. 280 (1981). (ECF No. 11, Ex. 19 at 15-16.) Because Ms. Broussard has not put forth any persuasive argument to show that AJ Svendsen's decision was arbitrary or capricious, the decision will be upheld.

---

[8] In addition, Ms. Broussard has presented no evidence showing that she actually ever requested a reasonable accommodation to enable her to perform the duties of her position. (*See* Kochman & Powers Affs., ECF No. 11, Ex. 7.)

A separate Order follows.


January 2, 2013_____                    _____/s/_____
Date                                         Catherine C. Blake
                                             United States District Judge